IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **VOIP-PAL.COM, INC.** <br> *Plaintiff,* <br><br> v. <br><br> **GOOGLE LLC** <br> *Defendant.* | § <br> § <br> §    **Civil No. 6:21-cv-00667-ADA** <br> § <br> §    [PUBLIC VERSION] <br> § <br> § <br> § |

**■ ORDER GRANTING MOTION TO TRANSFER VENUE**

Defendant Google LLC ("Google") filed its Motion to Transfer (the "Motion") on November 11, 2021. ECF No. 24. Plaintiff VoIP-Pal.com, Inc. ("VoIP") filed its Opposition to Google's Motion on March 22, 2022. ECF No. 46. Google filed its Reply on May 6, 2022. ECF No. 53. After careful consideration of the briefing, the Court **GRANTS** Google's Motion.

**I.     FACTUAL BACKGROUND**

Plaintiff VoIP is a Nevada corporation with its principal place of business in Waco, Texas. ECF No. 1 ¶ 1. Defendant Google is a Delaware corporation with its principal place of business in Mountain View, California. ECF No. 17 ¶ 2. VoIP filed a complaint against Google alleging infringement of U.S. Patent Nos. 8,630,234 (the "'234 patent") and 10,880,721 (the "'721 patent," collectively the "Asserted Patents") on June 25, 2021. ECF No. 1 ¶¶ 9-10. The Asserted Patents describe systems, apparatuses, and methods for providing an access code to roaming mobile communication devices such as smartphones to enable access to suitable communication routing infrastructure. *Id.* ¶ 25. The selection of the communication channel for a call can be optimized based on the calling device's current location. *Id.* VoIP accuses Google's product Google Fi of infringing the Asserted Patents. *Id.*

Specifically, VoIP alleges that Google Fi is an online messaging and communication platform which includes an Internet Protocol Multimedia Subsystem (IMS) that delivers communications services over an IP network. *Id.* ¶ 26. One feature Google Fi implements is Voice Over WiFi ("VoWiFi"), which allows any WiFi network to access the evolved packet core architecture provided by Google Fi's calling system via an evolved packet data gateway at the border between the public Internet and a mobile core of the Google Fi calling system. *Id.* ¶ 27. That gateway securely connects a mobile device to the core, allowing the device to use a WiFi connection like it would use a traditional cellular data connection. *Id.* ¶ 27. Google Fi also enables mobile roaming by producing an access code identifying a communication channel useable by the mobile telephone or device to initiate a call using the channel. *Id.* ¶ 28. Within Google Fi, the access code is based on a location identifier and/or based on a location pre-associated with the mobile telephone or device. *Id.*

While VoIP's principal place of business is here in Waco, only Chief Financial Officer Kevin Williams works in Waco. ECF No. 53-1 ¶ 3. Moreover, until recently VoIP's principal place of business was in Bellevue, Washington—VoIP moved to Waco in March of 2021, less than one year before it filed this lawsuit. *Id.*

## II.    LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an

'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action might have been brought in the transfer destination venue. *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). Answering that question requires a determination of whether the proposed transferee venue is proper. A plaintiff may establish proper venue by showing that the defendant committed acts of infringement in the district and has a regular and established place of business there. 28 U.S.C. § 1400(b). A defendant has a regular and established place of business in the district if the plaintiff proves that there is a "physical place in the district," that it is a "regular and established place of business," and lastly that it is "the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

Additionally, Fifth Circuit courts "should . . . grant" a § 1404(a) motion if the movant can show his proposed forum is "clearly more convenient." *Volkswagen II*, 545 F.3d at 315. The Fifth Circuit further held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. US. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (hereinafter "*Volkswagen I*") (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home;

(3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

The burden to prove that a case should be transferred for convenience falls on the moving party. *Volkswagen II*, 545 F.3d at 314. Thus, the movant must demonstrate that the alternative venue clearly more convenient than the plaintiff's chosen forum. *Id.* at 315. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *Id*. at 314–315. While "clearly more convenient" is not necessarily equivalent to the "clear and convincing" evidence standard, the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

### III.   ANALYSIS

**A.  VoIP could have brought this suit in the Northern District of California.**

The preliminary question in any transfer analysis under 28 U.S.C. § 1404(a) is whether the plaintiff could have properly brought its lawsuit in the proposed transferee forum. *Volkswagen II*, 545 F. 3d at 312. VoIP certainly could have. Under 28 U.S.C. § 1400(b), one location where venue in a patent lawsuit is proper is where the defendant has committed acts of infringement and maintains a regular and established place of business. Google's principal place of business is in the Northern District of California, and Google has sold the Accused Products within the district as well. VoIP does not dispute that this threshold inquiry is satisfied.

B. **The private interest factors favor transfer.**

a. **The relative ease of access to sources of proof favors transfer.**

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). The question properly focuses on "*relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). And "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

Here, Google argues that its employees with relevant knowledge of the accused technologies are "primarily" based in the Northern District of California, and none are in the Western District of Texas. ECF No. 24-1 ("*Rope Decl.*") ¶ 5. Google's technical documents about products and services are normally created and maintained by the employees working on those products and services. *Id.* ¶ 4. Google further argues that there is no indication that any evidence is present in this District and points out that VoIP itself maintains documents in the Northern District of California. ECF No. 53 at 3; ECF No. 54-1 at 4. Thus, Google argues, "the geographic locus of evidence" favors transfer. ECF No. 53 at 3.

In rebuttal, VoIP points out that Google has failed to explain how its electronic documents are more easily accessible in the Northern District of California when it has 1,755 employees working in the Western District of Texas. ECF No. 46 at 7. VoIP argues: "for Google, which has become one of the most successful corporations in the world specifically because it is able process

prodigious amounts of electronic data daily, to argue that it is inconvenient for it to provide documents in WDTX, is simply not credible." *Id.*

The Court finds this factor to weigh in favor of transfer. Google has shown that both Google and VoIP maintain evidence in the Northern District of California. ECF No. 54-1 at 4; ECF No. 24-1 ¶¶ 4-9. The accused technologies in this case were developed at Google's Mountain View headquarters, the "strategic center" of Google's business. *Rope Decl.* ¶¶ 2, 5. This Court must not only consider the location of Google's documents, all of which are in the Northern District of California, but also the location of "document custodians" and "where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021). Google identified two engineers responsible for Google Fi, ▇▇▇ and ▇▇▇▇▇▇, and two responsible for Hangouts, ▇▇▇▇▇ ▇▇▇▇▇. *Rope Decl.* ¶¶ 6-9. Those four engineers are in the Northern District of California. *Id.* Because the employees responsible for development of the accused technologies are also the ones charged with maintaining relevant documents, the location of Google's custodians further shifts this factor in favor of transfer. VoIP is correct that Google has 1,755 employees here in the Western District of Texas, but until Google or VoIP indicates which of those 1,755, if any, have access to the electronic documents relevant to this case, the Court cannot find that Google's employees here in the Western District of Texas can access the evidence just as easily. Thus, this factor weighs in favor of transfer.

### b. The compulsory process factor weighs slightly against transfer.

The Federal Rules permit a court to subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person,

if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv Inc.*, No. 6:18-cv-00372, 2019 WL 4743678 at *14 (citing *Volkswagen II*, 545 F.3d at 316). And "when there is no indication that the witness is willing," the Court must presume that its subpoena power will be necessary to secure the witness' attendance. *In re DISH Network LLC*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (quoting *In re HP, Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018)). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

To support transfer, Google points to prior art witnesses Paquet and Walker located in the Northern District of California whom Google intends to use to prove invalidity. ECF No. 24 at 11. Since these witnesses have provided no indication of their willingness to attend trial, Google argues that the Northern District of California's subpoena power will be necessary. *Id.*

For its part, VoIP points to witnesses George Brunt and Marcus Redding in Dallas and Austin whom VoIP asserts will require this Court's subpoena power to compel attendance. ECF No. 46 at 8. Like Google's witnesses, VoIP's Dallas and Austin witnesses have not indicated a willingness to attend trial. *Id.* VoIP further argues that Google failed to show that its "cherry picked" prior-art witnesses are relevant. *Id.*

The Court finds this factor weighs slightly against transfer. Google cites two witnesses in its desired forum that require the Northern District of California's compulsory process; VoIP points to two that require this Court's compulsory process. The Court discounts the likelihood that

Google will call its "cherry picked" prior art witnesses because Google served invalidity contentions that identify 57 publications and 19 systems. Parties rarely call prior art witnesses to trial, and even if Google did, Google is statistically unlikely to select the two prior art references involving Paquet and Walker from among its 76 total options. The Court does not categorically disregard these prior art witnesses. *In re Hulu, LLC*, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021). Because the Court presumes witnesses are unwilling unless they indicate otherwise, the Court counts Google's witnesses as unwilling witnesses. *DISH Network*, 2021 WL 4911981, at *3. Similarly, the Court deems VoIP's two witnesses to be unwilling. *Id.* The same number of unwilling witnesses reside in the Northern District of California as the Western District of Texas, but Google is unlikely to call Paquet and Walker. Thus, this factor weighs slightly against transfer.

c.  **The cost of attendance for willing witnesses favors transfer.**

The most important factor in the transfer analysis is witness convenience. *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). When analyzing this factor, the Court should consider all potential materials and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). This factor appropriately considers the cost of attendance of all willing witnesses, including both party and non-party witnesses. *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *2–3 (Fed. Cir. Oct. 13, 2021). "Courts properly give more weight to the convenience of non-party witnesses than to party witnesses." *Netlist, Inc. v. SK Hynix Inc.*, No. 6:20-CV-00194-ADA, 2021 WL 2954095, at *6 (W.D. Tex. Feb. 2, 2021).

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor or inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Volkswagen II*, 545 F.3d at

317 (quoting *Volkswagen I*, 371 F.3d at 203). But the Federal Circuit has clarified that courts should not "rigidly" apply the 100-mile rule in cases where witnesses would be required to travel a significant distance no matter where they testify. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317).

Rather, "the inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, slip op. at 9 (Fed. Cir. Sept. 27, 2021). The Federal Circuit has indicated that time away from an individual's home is a more important metric than distance. *Id.* Time and distance frequently and naturally overlap because witnesses usually take more time to travel farther away, thereby increasing the time away from home.

Google's declarant, Andrew Rope, "understand[s]" that witnesses relevant to Google Fi are based at Google's Mountain View, California campus. *Rope Decl.* ¶ 7. Specifically, Rope points out software engineers ███████ and ███████████. *Id.* Regarding Hangouts, Google points to engineers ███████████████ and ███████ as relevant employees based in Mountain View. *Id.* ¶ 9. Other software engineers with knowledge about Hangouts are based in Kirkland, Washington, and Stockholm, Sweden. *Id.* Google "is aware" of no employee in the Western District of Texas with relevant knowledge on either Google Fi or Hangouts. *Id.*

VoIP's argument on this factor focuses mainly on deficiencies in Google's arguments rather than affirmative contentions of its own. ECF No. 46 at 8-11. VoIP points out that Google's declarant is not a technical employee but a "Senior Legal Project Manager," that Mr. Rope's declaration fails to address certain aspects of the accused technologies, and that Mr. Rope apparently relied on no documents to prepare his declaration. *Id.* VoIP asks this Court not to "reward[] Google for being less than forthcoming" throughout the venue discovery process. *Id.* at

11. Finally, VoIP identifies its own witnesses and inventors, but VoIP argues that the convenience of its own witnesses "is not a factor in the transfer analysis." *Id.* at 11. VoIP does not identify the foreign location of the inventors, so the Court cannot determine their convenience.

VoIP's objections to Google's venue-discovery practices are well-taken, and Mr. Rope's declaration certainly has its deficiencies. To start, Mr. Rope's declaration fails to address whether he attempted to locate employees with knowledge about sales, marketing, or finance of the accused products. As VoIP points out, the only conclusion this Court can draw is that Mr. Rope failed to do so. Additionally, Mr. Rope's perfunctory investigation into relevant technical witnesses raises eyebrows. It strains credibility that only six engineers out of a company of tens of thousands of employees were involved in the design and development of the accused technologies in this case. Moreover, Mr. Rope's "carefully worded" declaration never concretely states that there are no relevant employees in the Western District of Texas—only that no relevant employees "are *known*" to be in this District. *Rope Decl.* ¶ 5 (emphasis added). Most egregiously, Mr. Rope apparently relied on no documents in his venue investigation. ECF No. 47-9 at 9–10. When asked to produce "all documents reviewed or relied upon" by Mr. Rope in preparing his declaration, Google objected and responded that there were none. *Id.*

Due to VoIP's persuasive arguments, the Court discounts the evidentiary value of Mr. Rope's declaration. VoIP seeks vague relief by asking only that "Google should not be rewarded for being less than forthcoming." ECF No. 46 at 11. VoIP does not ask the Court to strike his declaration or for an adverse inference, so the Court will not *sua sponte* grant this relief. The Court will merely resolve all disputed facts against Mr. Rope's declaration when VoIP supplies any evidence at all that rebuts the challenged parts of his declaration. *Scramoge Tech. Ltd. v. Apple, Inc.*, No. 6:21-CV-00579-ADA, 2022 WL 1667561, at *3–4 (W.D. Tex. May 25, 2022) (finding

it appropriate to give no weight to contested parts of the declaration of repeatedly unreliable declarant Mark Rollins).

Still, the Court finds that this factor weighs in favor of transfer. While the Rope declaration has little evidentiary value, even its little evidentiary value is more than the evidence that VoIP offers against transfer, which is none. VoIP presents no declaration, deposition testimony, or any other evidence to rebut Google's thin venue arguments. Mr. Rope's identification of ▇▇▇, ▇▇▇▇▇▇, ▇▇▇▇▇▇▇▇, and ▇▇▇▇nt witnesses in the Northern District of California remains unchallenged. ECF No. 24-1 ¶¶ 7, 9. VoIP has convinced the Court that Mr. Rope likely made a deficient investigation before declaring, "I am aware of no Google engineers or managers" who work on the accused products in the Western District of Texas, but VoIP does not supply the Court with evidence of any relevant Google engineers or managers in this District. *Id.* Even if the Court were to discredit Mr. Rope's statement entirely for being formed based on an insufficient investigation, there remains no affirmative evidence of relevant Google engineers here in the Western District of Texas. Thus, the Court finds this factor favors transfer.

    **d. Other practical problems are neutral.**

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit

cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010).

The Court finds this factor neutral. VoIP filed seven cases in this District on June 25, 2021, each accusing similar technologies. ECF No. 26 at 1. Two of those cases have since been dismissed. *VoIP-Pal.com, Inc. v. Apple Inc.*, No. 6:21-cv-670; *VoIP-Pal.com, Inc. v. AT&T Corp.*, No. 6:21-cv-671. But the Northern District of California also has experience with these patents: that court presided over five related VoIP cases between 2018 and 2019. ECF No. 27 ("*Kelley Decl.*") at 2 ¶¶ 2-5. VoIP argues that Judge Koh's familiarity with the facts left the Northern District of California when Judge Koh left the bench there. ECF No. 46 at 12. However, other than Judge Koh, Magistrate Judge DeMarchi has handled multiple related cases in the Northern District of California. ECF No. 53 at 4. Thus, both the transferor and transferee forums are familiar with the parties and technologies at issue. And while the co-pending litigation in this Court would normally weigh against transfer, each of those cases are also subject to pending motions to transfer. Accordingly, the Court finds this factor neutral.

### C. The public interest factors are neutral.

#### a. Court congestion weighs against transfer.

The analysis under this factor asks "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963); *Parkervision, Inc. v. Intel Corp.*, No. 6:20-CV-00108, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). The Court considers the "speed with which a case can come to trial and be resolved . . . ." *Genentech, Inc.*, 566 F.3d at 1347. However, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are

neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

The Court finds this factor to weigh against transfer. Google argues that the median time to trial in both districts is comparable: 24.1 months for the Northern District of California versus 20.1 months for this Court. ECF No. 26-17 at 7. Google also notes that this Court has more pending patent cases and speculates that the caseload will delay this Court's ability to hold trials. ECF No. 24 at 13. But Google uses outdated data for the Northern District of California that is weighted by cases data collected since 2014. ECF No. 26-18 at 2. The statistics show the time-to-trial based on 741 cases in the Northern District of California that reached trial since 2014. *Id.* at 3. Thus, the 24.1 month time-to-trial incorporates out-of-date statistics from before the Northern District of California felt the full impact of halting its trials due to the COVID-19 pandemic. More recent statistics show that the average time to trial in patent cases in the Northern District of California is now 45.2 months. *Billjco, LLC v. Apple Inc.*, No. 6:21-CV-00528-ADA, 2022 WL 607890, at *8 (W.D. Tex. Mar. 1, 2022).

Google correctly notes that this Court has a larger patent caseload, but even so, this Court has been able to hold trials faster than the Northern District of California, with an approximate time to trial of two years. *See, e.g., MV3 Partners v. Roku,* 6-18-CV-00308 (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *CloudofChange, LLC v. NCR Corp.*, No. 6-19-CV-00513 (W.D. Tex., filed August 30, 2019) (20.3 months from case filing to trial); *VLSI Tech. LLC v. Intel Corp.*, No. 6-21-CV-00057 (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. et al v. Amazon.Com Inc.*, No. 6-21-CV-00511 (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6-19-CV-00044 (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus v. Google*,

6-20-CV-00101 (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, 6-20-cv-00018 (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare v. Google LLC*, 6-19-CV-663 (W.D. Tex., filed Nov. 15, 2019) (23.8 months from case filing to trial); *NCS Multistage v. Nine Energy*, No. 6-20-cv-277 (W.D. Tex., filed Mar. 24, 2020) (21.8 months from case filing to trial); *EcoFactor, Inc. v. Google LLC*, No. 6-20-cv-00075 (W.D. Tex., filed Jan. 31, 2020) (24 months from case filing to trial); *Densys Ltd. v. 3Shape Trio A/S*, 6-19-CV-00680 (W.D. Tex., filed Nov. 26, 2019) (28.3 months from case filing to trial); *Appliance Computing III, Inc. v. Redfin Corp.*, No. 6-20-cv-00376-ADA (W.D. Tex., filed May 11, 2020) (24 months from case filing to trial).

Despite this Court's heavy patent docket, a case transferred to the Northern District of California will take nearly twice as long to reach trial. And as this Court recently noted, "the public has an interest in the rapid resolution of patent disputes (without reference to whether the patent is being worked)." *Billjco*, 2022 WL 607890 at *8 n.2. The court congestion factor thus weighs against transfer.

### b. The local interests favor transfer.

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). Accordingly, "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In*

*re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original).

But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence in the district. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320 (Fed. Cir. 2021) (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)).

The Court finds this factor to weigh in favor of transfer. To be sure, Google has a strong presence within the Western District of Texas—VoIP correctly points out that Google employs over 1,700 people here, leases over 900,000 square feet of office space here, and intends to add 5,000 more employees here in the near future. ECF No. 46. But this is not the type of presence courts weigh in analyzing the local interests factor. *Apple*, 979 F.3d at 1344. Rather, the Court looks to the events that give rise to this lawsuit. *Juniper Networks*, 14 F.4th at 1320. Accordingly, the Court properly looks to the location where Google's accused technology was developed: the Northern District of California. ECF No. 24-1 ¶¶ 5, 7, 9. As the Federal Circuit has made clear, the "research[], design[], and develop[ment]" of accused technology within the Northern District of California are "significant factors that give the Northern District of California a legitimate interest in adjudicating the cases 'at home.'" *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371 (Fed. Cir. 2021), *cert. denied sub nom. Ikorongo Tex. LLC v. Samsung Elecs. Co., Ltd.*, 142 S. Ct. 1445 (2022).

And while the location of VoIP's headquarters in Waco would normally be entitled to at least some weight, the Court gives no weight to the plaintiff's location when there is evidence that

the presence within the forum is "recent and ephemeral." *Juniper Networks*, 14 F.4th at 1320; *cf. BillJCo LLC v. Apple, Inc.*, No. 6:21-cv-00528, 2022 WL 607890 at *9 (W.D. Tex. Mar 1, 2022). VoIP established itself in Waco ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ around one year before it filed this lawsuit, and its "headquarters" here are staffed by one part-time employee. ECF Nos. 53-1 at 1 ¶ 3; 53-2. Such a connection to Waco is insufficient to weigh against transfer.

In conclusion, the local interest factor favoring transfer cancels out the court congestion factor that weighs against transfer. Thus, the public interest factors are neutral overall.

### c. The remaining public interest factors are neutral.

The Court finds the "familiarity with governing law" and "avoidance of conflict of laws" factors neutral. Both districts are familiar with the uniform body of federal patent law overseen by the Federal Circuit, and there are no issues with conflict of laws or any foreign law. Thus, both factors are neutral.

## IV.   CONCLUSION

In sum, the balance of public and private *Volkswagen* factors clearly favors transfer. The sources of proof and convenience of willing witnesses favoring transfer outweigh the compulsory process factor, which only slightly weighs against transfer. The local interests factor weighs cancels out the court congestion factor. The remaining factors are neutral. Thus, Google's Motion to Transfer to the Northern District of California is **GRANTED**.

SIGNED this 31st day of May, 2022.

*[signature]*
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE